WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jarrod and Melissa Moreland, husband and wife, ) | | |
| Plaintiff, ) | CV 05-480 TUC DCB | |
| v. ) | | |
| Ronald J. Barrette, D.O., et al., ) | **ORDER** | |
| Defendants. ) | | |

The Court grants Defendants' Motion to Dismiss. For good cause, the Court grants Plaintiff's request for leave to file a late expert affidavit to comply with A.R.S. § 2603.

<u>Case Background</u>

On August 2, 2005, Plaintiffs filed their Complaint alleging personal injury and medical malpractice. Plaintiffs allege that Defendant Dr. Ronald Barrette performed laparoscopic right inguinal hernia repair surgery on August 6, 2003, resulting in obliteration of Mr. Moreland's vas deferens. Plaintiffs have been unable to conceive a child. Plaintiffs allege Dr. Barrette's care of Mr. Moreland fell below the applicable standard of care. (Joint Case Management Plan at 2, 4.)

Plaintiffs allege federal jurisdiction based on diversity. Plaintiffs are residents of North Carolina. Defendants Barrette are residents of Alabama. Defendant Spectrum Healthcare Nationwide, Inc. is a Delaware corporation doing business in Arizona. Defendant Comphealth Associates is a Utah corporation doing business in Arizona. The alleged injury occurred at Fort Bliss Army Hospital at Fort Huachuca in Sierra Vista, Arizona. The amount in controversy exceeds $75,000.

On May 24, 2006, Defendants Barrette filed a Motion to Dismiss the Complaint because Plaintiffs failed to comply with a state tort statute that requires all plaintiffs filing claims against health care professionals to file a Preliminary Expert Opinion Affidavit of Merit (expert affidavit). A.R.S. § 12-2603. Defendants argue that under the *Erie* doctrine the federal court, sitting in diversity, must apply state substantive law and federal procedural law. *Erie R. R & Tompkins*, 304 U.S. 63 (1938). Plaintiffs argue the state statute does not apply because it is a procedural rule that conflicts with federal discovery rules of procedure: Fed. R. Civ. P. 26 and 37. *See Hanna v. Plumer*, 380 U.S. 460 (1965).

## Overview of Erie Doctrine and Hanna

Federal diversity jurisdiction provides an alternate forum for the adjudication of state created rights, but it does not carry with it the generation of substantive law. *Gasperini v. Center of Humanities*, 518 U.S. 415, 426 (1996). Under the Rules of Decision Act, *"[t]he laws of the several states*, except where the Constitution or the treaties of the United States or Acts of Congress otherwise require or provide, *shall be regarded as rules of decision in civil actions in the courts of the United States* in cases where they apply." *Id.* at 427-28. Except under the Enabling Act, federal courts apply federal procedural law as prescribed by the Supreme Court. *Id.* at 428 n. 7.

Enabling Act considerations are aimed at protecting the separation of powers between the state and the federal government. Whereas, the Rules of Decision Act, under the *Erie* doctrine, involves the equal protection considerations reflected by the conferral of diversity jurisdiction on the federal courts to prevent apprehended discrimination in state courts against those not citizens of the state. *Hanna*, 380 U.S. at 467.

Both the Rules of Decision and Enabling Act cases involve substantive versus procedural distinctions, which under the broad command of *Erie* appear to be identical: federal courts sitting in diversity cases apply state substantive law and federal procedures. *Hanna*, 380 U.S. at 465. "However, as subsequent cases sharpened the distinction between

2

substance and procedure, the line of cases following *Erie* diverged markedly from the line construing the Enabling Act." *Id.* "*Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, made it clear that Erie-type problems were not to be solved by reference to any traditional or common-sense substance-procedure distinction: 'And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is * * * does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?'" *Id.* at 465-66 (quoting *Guaranty Trust*, 326 U.S. at 109.) (further citations omitted). Under *Erie*, the Court is concerned with discouraging forum shopping and avoiding inequitable administration of the laws.[1] *Id.* at 467.

In *Hanna*, the Court considered a state statute that required service "in hand" as compared to the service provisions in Fed R.Civ.P.4. The Court noted that *Erie* had never been invoked to void a federal rule, but when there was no federal rule broad enough in scope to cover the point in dispute– then *Erie* commanded the enforcement of state law. Under *Erie*, the Court considers whether the scope of the federal rule is "sufficiently broad to control the issue before the court." *Walker v. Armco Steel Corp.* 446 U.S. 740, 749-50 (1980). If the federal rule leaves no room for the operation of [the state law], then the federal rule controls. *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987). The federal rules should be given their plain meaning, but they are not to be construed narrowly in order to avoid a direct collision. *See Walker*, 446 U.S. at 750 n. 9. However, courts should avoid a broad reading of the federal rules that would create significant differences between state and federal courts if the text permits. *Steward Org., Inc. v. Rioch*, 487 U.S. 22, 37-38 (1988). Furthermore, "federal courts have interpreted the federal rules . . . with sensitivity to important state interests and regulatory policies." *Gasperini*, 518 U.S. at 427 n.7.

---

[1] Plaintiffs have confused the substantive/procedural and "outcome-determinative" discussions under *Erie* with Enabling Act conflict of law discussions.

The Supreme Court made it quite clear in *Walker* that: "There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute [] should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between state and federal plaintiffs, and *Erie* and its progeny do not permit it." *Walker*, 446 U.S. at 752.

Here, it is "quite clear" that this case would be barred in the state courts by the state statute, and only because of the fortuity that there is diversity of citizenship between state and federal plaintiffs and application of the federal rules of procedure may it proceed through litigation to judgment in federal court. Plaintiffs filed this action in federal court, and complied with A.R.S. § 12-2603(A) by certifying that expert testimony may be required in this case to establish the health care professional's standard of care or liability for the claim. Plaintiffs made their initial disclosures under Fed.R.Civ.P.26(a)(1) on May 11, 2006, without serving the expert affidavit. Under A.R.S. § 12-2603(F), the action is subject to dismissal.

## Threshold Question: Conflict of Laws

The Ninth Circuit explains the analysis as follows:

> First, we must determine if the federal rule and state rule are actually coextensive. If the federal rule does not address the situation, there would be no conflict between state and federal rules. We would then apply the *Erie* analysis to determine if the federal court should enforce the state rule. If the federal rule does address the situation, there would be an unavoidable conflict between the state and federal rules. We would then apply the *Hanna* analysis: if the federal rule is within the scope of constitutional power and the Rules Enabling Act, it applies unless the *Erie* considerations are so strong that they can justify interrupting the normal function of the federal court processes.

*Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 155 (9th Cir. 1992) (citing *Olympic Sports Prods. v. Universal Athletic Sales Co.*, 760 F.2d 910, 914-15 (9thCir. 1985)).

In *Harvey's Wagon Wheel*, the Ninth Circuit Court of Appeals applied a federal rule permitting dismissal for failure to prosecute rather than a Nevada statute that mandated

4

dismissal for failure to prosecute after five years. The club, Harvey's, sued Van Blitter for a gambling debt. After 5 years, Harvey's moved for summary judgment. The defendant responded that the case should be dismissed under Nevada law mandating dismissal of the action for failure to prosecute because plaintiff had failed to bring the action to trial after five years. The court applied federal law and refused to grant permissive dismissal for failure to prosecute.

In looking at whether the two statutes are coextensive, the court looked at whether the federal rule addressed the situation addressed by the state statute. The court reasoned that both rules addressed judicial housekeeping interests and were to ensure that reasonable diligence is displayed by the parties. The court held that the federal rule permitted dismissal at (and before) the time required by the state statute, therefore, the federal rule was sufficiently broad to cover the point in dispute. The court found they were not perfectly coextensive, but sufficiently in conflict to require application of the federal rule unless *Erie* considerations were so strong that they could justify interrupting the normal function of the federal court process. The court found they were not and applied the federal rule.

Here, the threshold question is whether or not the state statute, A.R.S. § 12-2603, and Federal Rules of Civil Procedure, Rules 26 and 37, are actually coextensive. If the federal rules do not address the situations covered by the state statute, there is no conflict, and the Court applies the *Erie* analysis to determine if the federal court should enforce the state statute. The Court finds that there is no conflict based on the following analysis.

*A.R.S. §12-2603*

Arizona has enacted statutes concerning malpractice suits against professionals and health care providers. A.R.S. §§ 12-2601 to 2605. In 1999, the legislature enacted provisions pertaining to licensed professionals, A.R.S. § 12-2602, requiring claimants to certify whether or not expert opinion testimony is necessary to prove a claim against a licensed professional, and where such certification affirms the need for expert opinion testimony, claimants are

5

required to serve a preliminary expert opinion affidavit with the initial disclosures that are required by Rule 26.1, Arizona Rules of Civil Procedure. Claims against healthcare providers were excepted from A.R.S. § 12-2602 because they were screened by an administrative merit panel. In 2004, subsequent to dissolution of the merit panel, the legislature adopted a mirror image statute to cover claims against health care professionals: A.R.S. § 12-2603.[2]

Arizona's merit certificate statutes were adopted to curb a perceived increase in malpractice suits. The purpose of A.R.S. § 12-2602.01, renumbered § 12-2603, was "to curtail the filing of frivolous lawsuits against health care professionals and the filing of frivolous nonparty at fault designations by health care professionals." The public policy behind the statute was to curtail rising medical costs related to malpractice insurance and litigation.

Under A.R.S. § 12-2603, the preliminary expert opinion affidavit must show that the claims amount to a violation of the applicable standard of care resulting in liability and that the medical acts caused the claimed damages. Under A.R.S. § 12-2603(B), "the preliminary expert opinion affidavit shall contain at least the following information."

    1. The expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim.

    2. The factual basis for each claim against a health care professional.

---

[2]A.R.S. §12-2603. Preliminary expert opinion testimony against health care professionals; certification; definitions
    A. If a claim against a health professional is asserted in a civil action, the claimant...shall certify in a written statement that is filed and served with the claim...whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim.
    B. If the claimant...or its attorney certifies pursuant to subsection H of this section that expert opinion testimony is necessary, the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Arizona rules of civil procedure.

    3. The health care professional's acts, errors, or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability.

    4. The manner in which the health care professional's acts, errors or omissions caused or contributed to the damages of other relief sought by the claimant.

An "Expert means" a person who is qualified by knowledge, skill, experience, training or education to express an opinion regarding a licensed health care professional's standard of care or liability for the claim. A.R.S. § 12-2603(H)(2).[3]

If the claimant certifies that the claim does <u>not</u> require expert testimony, defendant may challenge that assertion, and the court shall resolve the issue, set a date for compliance, and stay all proceedings until compliance is attained. A.R.S. § 12-2603(D).

"The Court, on its own motion or the motion of the health care professional . . . , shall dismiss the claim against the health care professional . . . *without prejudice* if the claimant . . . fails to file and serve a preliminary expert opinion affidavit after the claimant or claimant's attorney has certified that an affidavit is necessary or the court has ordered the claimant . . . to file and serve an affidavit." A.R.S. § 12-2603(F).

*Federal Rule of Civil Procedure 26*

Fed.R.Civ.P.26 guides pre-trial discovery information gathering. Subsection (a)(1) requires a party, without awaiting a discovery request, to make initial disclosures of their own supporting evidence. Subsection (a)(2) provides for disclosures of expert testimony.

---

[3] The qualifications for experts under § 12-2603 are distinguishable from expert witness qualifications in § 12-2604 for state medical malpractice actions, which require opinions by experts in the same clinical fields and fields of specialty as the defendant and require such experts to have practiced for a majority of their time during the last year in such fields. A.R.S. § 12-2604 is a good example of a state statute that directly conflicts with Fed.R.Civ.P.26(a)(2) because the federal rule governs the specific qualifications for expert witness opinions that will be used as evidence in a federal case. The case cited by Plaintiffs, *Poindexter v. Bonsukan*, 145 F. Supp. 2d 800 (Tex. 2001) dealt with such a conflict.

The overriding purpose of the discovery rules is to promote full disclosure of all facts to aid in fair, prompt and inexpensive disposition of lawsuits. *Woldum v. Roverud Const. Inc.*, 43 F.R.D. 420 (D. Iowa 1968). The discovery rules serve three basic purposes. They permit the preservation of evidence that might otherwise be lost before trial, provide mechanisms for narrowing the issues in dispute between the parties, and permit the parties to acquire information about their own and the other side's cases. *Wood v. Todd Shipyards*, 45 F.R.D. 363. (D. Tex 1968).

Rule 26(a)(1) requires initial disclosures of the following: name, address, and telephone number of each individual likely to have discoverable information that the party may use to support its claims or defenses, unless used solely for impeachment, and the subjects of their information; a copy of or description by category and location of all documents, data compilations, and tangible things that are in the possession, custody, or control of the party making the disclosures; computation of a category of damages, including materials bearing on the nature and extent of injuries; and disclosures that are relevant to claims for indemnity or reimbursement of payments.

Initial disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order. This Court does not set a date for making initial disclosure, but refers the parties to Rule 26(f), which requires the parties to make their initial disclosures as soon as practicable, but at least 21 days before the Rule 16 scheduling conference is held by the Court. Initial disclosures are based on the information reasonably available to a party at that time and are not excused because a case has not yet been fully or completely investigated or because one party challenges the sufficiency of another party's disclosures or because another party has not made its initial disclosures.

Rule 26(a)(2) provides that at least 90 days before trial, or when otherwise directed by the Court, each party must disclose their *expert witnesses who are retained to*

8

*present expert testimony in the case*, accompanied by a written report prepared and signed by the witness containing a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed.R.Civ.P.26(a)(2).[4] This Court sets specific deadlines for expert witness and report disclosures that coincide with the 90 and 30 day time frames in Rule 26 for these disclosures.

*Federal Rule of Civil Procedure 37*

Fed.R.Civ.P.37 is a principal source of authority for a federal district court to find a party in civil contempt of its discovery orders. *Clinton v. Jones*, 36 F. Supp. 2d 1118, 1126-27 (E.D. Ark 1999). Pursuant to Rule 37(b)(2), a court may hold a party in contempt of court for failing to obey an order to provide discovery and may impose several specific, non exclusive sanctions to address such misconduct, the parameters of the available measures being such orders in regard to the failure as are just. *Id.* (citing *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999)). Sanctions are subject to the discretion of the court. Fed.R.Civ.P.37(b)(2). Under Rule 37, a party, upon reasonable notice to the other party, may apply for an order compelling disclosure or discovery if the other party fails to make a disclosure required by Rule 26(a) or may seek any other appropriate sanction.

The extensive sanctions available to courts under Fed.R.Civ.P.37 are necessary to, among other things, facilitate discovery and to deter abuse of the discovery process.

---

[4] See n. 3 (noting a conflict exists with A.R.S. § 2604, the state statute that establishes the qualifications for expert witnesses in medical malpractice cases.

*National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643; *BankAtlantic v. Blythe Eastman Paine Webber, Inc.* 130 F.R.D. 153, 154 (S.D. Fla. 1990) ("Enforcement of the sanctions order is necessary to serve the punishment and deterrence goals of the rule and to vindicate the integrity of the Court and discovery process").

*Conflict Analysis*

In *Bertleson v. Sacks Tierney*, 60 P.3d 703 (Ariz. App. 2003), the Arizona Court of Appeals considered A.R.S. § 2603's prototype, A.R.S. § 2602 which applies to licensed professionals and determined that it is constitutional because it does not infringe on the fundamental right of access to the courts to file a law suit and does not violate the equal protection or separation of powers clauses in the Arizona constitution.

In its analysis, the court explained that the statute only permitted dismissal after it was determined that expert testimony was required and plaintiff, thereafter, failed to provide the required affidavit. At all times, the trial court maintained the ability to determine the date for compliance, and for good cause could extend the time for filing the affidavit. The court reasoned that subjecting a claim to dismissal under A.R.S. § 12-2602 did not cause a plaintiff to lose a claim any more than dismissal of an action under a statute of limitations, or by motion to dismiss or for summary judgment. The court also found that Arizona's discovery rules, Rule 26.1 and Rule 16(c), did not require disclosures at a time different than that provided in § 12-2602, which like § 12-2603, is when initial disclosures are made as required by Rule 26.1.

The initial disclosures, made under Arizona's Rule 26.1, are very similar to the initial disclosures required by Fed.R.Civ.P.26(a)(1). There is also some difference in the timing of the disclosures between Arizona's Rule 26.1 and Fed.R.Civ.P.26. The federal rule requires initial disclosures to be made 14 days after the Rule 26(f) conference, which must be held by the parties as soon as practicable, but not later than 21 days before the Rule 16 scheduling conference is held by the Court. Arizona's Rule 26.1 requires initial

10

disclosures to be made 40 days after the filing of the responsive pleading. The time frames are not identical, but they both provide for preliminary disclosures to be made, initially, prior to discovery being conducted in a case, with the opportunity for supplementation and further disclosures to be made after discovery.

Just as there is no conflict in disclosing the expert affidavit at the time of initial disclosures under Arizona's Rule 26.1, there is no conflict in disclosing the expert affidavit required under A.R.S. § 12-2603 at the time initial disclosures are made pursuant to Fed.R.Civ.P.26(a)(1). Here, Federal Rule 26(a)(1) covers the initial disclosures that must be made in this case. Rule 26(a)(1) may be complied with in every detail, without any conflict with A.R.S. § 12-2603. There is no conflict between A.R.S. § 12-2603 and Fed. R. Civ.P.26(a)(2) because subsection (a)(2) of Rule 26 pertains to expert testimony which is disclosed "in addition to the disclosures required by paragraph (1)" and cover expert opinions and expert reports that are based on a fully developed record and which will be used as testimony in the case.

The mandatory dismisal of the action under A.R.S. § 12-2603 does not conflict with the discretionary nature of dismissal as a sanction under Fed.R.Civ.P.37. In deciding its constitutionality, the Arizona court held that dismissal under A.R.S. § 12-2602 is entirely discretionary because the court maintains the ability to determine the date for compliance and may extend the time beyond the initial disclosure for good cause. *Id.* Under both A.R.S. § 12-2603(D) and Rule 37(A)(2)(a), the defendant may ask the court to compel disclosure, and under both an action may be dismissed for failure to comply with disclosure requirements. A.R.S. § 12-2603(F); Fed.R.Civ.P.27(a)(2)(A).

This Court finds that the federal rules cover discovery procedures in this case, whereas the state statute is aimed at weeding out frivolous law suits at the most preliminary stage of a proceeding before much, if any, discovery has been completed. Finding no conflict, the Court turns to *Erie.*

11

*Analysis: Erie Doctrine*

The question becomes: "'Would application of the [standard] ... have so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would [unfairly discriminate against citizens of the forum States, or] be *likely to cause a plaintiff to choose the federal court*?'" *Gasperini*, 518 U.S. at 428 (quoting *Hanna*, 304 U.S. at 468, n.9) (emphasis added). This "outcome determinative" test to establish whether or not A.R.S. § 2603 is substantive or procedural is guided by the twin aims of the *Erie* rule: discouragement of <u>forum-shopping</u> and avoidance of <u>inequitable administration</u> of the laws. *Gasperini*, 518 U.S. at 428 (quoting *Hanna*, 304 U.S. at 85).

<u>Forum shopping</u>: To the extent that there is an important public policy behind the adoption of A.R.S. § 12-2603, this is "relevant to determine whether refusal to apply the state rule would encourage forum-shopping or unfairly discriminate against State citizens." *Freund v. Nycomed Amersham*, 347 F.3d 752, 762 (9th Cir. 2003) (citing *Hanna*, 380 U.S. at 468 n. 9.) Clearly there would be great incentive for a plaintiff wishing to bring a frivolous claim to file in federal court and escape the expert opinion of merit affidavit required in state court. This unfairly discriminates against state citizens that may be subjected to frivolous law suits in federal court just because, fortuitously, diversity exists in a case. It circumvents the right of the state of Arizona to adopt such public policy statutes in the interests of its citizenry.

<u>Inequitable administration</u>: By applying A.R.S. § 12-2603, the administration of state medical malpractice claims will be the same in both federal and state courts. In both courts, the affidavit must be filed prior to discovery. In both courts, a defendant may bring a motion to dismiss the claim as frivolous based on the failure of the Plaintiff to file the affidavit after initial disclosures. The provisions in A.R.S. § 12-2603, that allow the Court discretion to extend the time for complying with the affidavit requirement, provides

for the equitable administration of discovery under A.R.S. § 12-2603 and Fed. R. Civ. P.37.

## Conclusion

The Supreme Court made it quite clear in *Walker* that: "There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute [] should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between state and federal plaintiffs, and *Erie* and its progeny do not permit it." *Walker*, 446 U.S. at 752. Therefore, the Court finds that A.R.S. § 12-2603 applies in this case.

On January 5, 2006, Plaintiffs certified that expert testimony may be required in this case to establish the health care professional's standard of care or liability for the claim. They reserved the right to object to complying with A.R.S. § 12-2603. Both parties failed to make their initial disclosures as required under Fed.R.Civ.P.26(a)(1), prior to the Rule 16 scheduling conference which was held on April 27, 2006. At the scheduling conference neither party raised the issue of A.R.S. § 12-2603.

On May 11, 2006, when Plaintiffs made their initial disclosures under Fed.R.Civ.P.26(a)(1), they did not disclose an expert affidavit. Defendant filed the Motion to Dismiss on May 24, 2006. At oral argument on the motion, Plaintiffs asked this Court for leave to file a late affidavit in the event the Court determines A.R.S. § 12-2603 applies. Given the failure of both parties to comply with the timeliness provisions for initial disclosures under the federal rules and because there is no precedent in the Ninth Circuit regarding the application of A.R.S. § 12-2603, the Court finds good cause to extend the time for Plaintiffs to disclose the expert affidavit.

At the April 27, 2006, scheduling conference, the parties requested and this Court agreed to an extended case management schedule to allow them time to conduct discovery and file dispositive motions raising issues of immunity. Discovery related to the immunity issues was to be completed by August 1, 2006, and the motions for summary judgment were due September 1, 2006. July 28, 2006, the parties stipulated to extend these deadlines to September 12, 2006 and October 13, 2006. On September 5, 2006, the parties again requested an extension of these deadlines, which the Court granted, as follows: discovery deadline of October 1, 2006 and motions due November 1, 2006. The Court ordered that no further extensions would be granted for presenting the immunity issues to the Court.

The parties requested this preliminary briefing and disposition of immunity issues to minimize the cost of litigating this action. This seems disingenuous given the extent of time and expense spent litigating the issue of whether or not to file the expert affidavit pursuant to A.R.S. § 12-2603. In combination with the extension of time related to the immunity issues, this Court affirms its last directive that no further extensions shall be granted and sets firm case management deadlines, which shall only be extended after strict scrutiny and for good cause.

**Accordingly,**

**IT IS ORDERED** that the Motion to Dismiss is held in abeyance, pending the filing of the expert affidavit by Plaintiffs within 20 days of the filing date of this Order.

**IT IS FURTHER ORDERED** that upon the filing of the affidavit, the Motion to Dismiss shall be DENIED without further order of the Court. In the event Plaintiffs fail to file the affidavit, the Motion to Dismiss shall be GRANTED, without prejudice and without further Order of the Court.

**IT IS FURTHER ORDERED** that Discovery shall be completed by July 1, 2007.  Expert disclosures shall commence on April 1, 2007.  The deadline for filing dispositive motions is August 1, 2007.  The Pretrial Order shall be due September 1, 2007.

DATED this 31st day of October, 2006.

David C. Bury
United States District Judge