WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jarrod and Melissa Moreland, husband and wife, | ) | |
| Plaintiff, | ) | CR   05-480 TUC DCB |
| v. | ) | |
| Ronald J. Barrette, D.O., et al., | ) | **ORDER** |
| Defendants. | ) | |

Defendants seek reconsideration of this Court's Order issued on March 27, 2007, denying all the dispositive motions urged by the Defendants. Defendants' motions for reconsideration are denied.

<u>Reconsideration</u>

Defendant Barrette argues that as a member of the military, acting within the scope of his employment as an army reservist, he is immune from suit under the Federal Tort Claims Act. Additionally, he argues that he is entitled to FTCA immunity under the Gonzalez Act because he was a personal service provider, under 10 U.S.C. § 1091, at the Bliss Army Hospital.

Defendants CompHealth and Spectrum assert that pursuant to Arizona's borrowed servant doctrine, they are entitled to summary judgment because if the Court finds they are Dr. Barrette's general employer, then he was a lent employee to a special employer, the Bliss Army Hospital. A general employer cannot be vicariously liable when the specific employer controls the details of the work performed by the employee at the time of the injury-causing

incident. *Ruelas v. Staff Builders Personnel Services, Inc.*, 18 P.2d 138, 140 (Ariz. 2001); *McDaniel v. Troy Design Services Co.,* 925 P.2d 693, 695-96 (Ariz. 1996).

Defendant Barrette argues that the lent servant doctrine provides the requisite federal employee status to make the Government liable under the FTCA, even if the Court rejects his immunity argument based on his reservist status.

On April 26, 2007, the Court ordered the Plaintiff and the Government to file responses. The Defendants were allowed to file a joint Reply. The issues are now fully briefed. The Court denies reconsideration.

<u>Federal Tort Claims Act (FTCA)</u>

On March 27, 2007, the Court summarily rejected Dr. Barrette's FTCA argument based on his membership in the Army Reserves. Dr. Barrette conceded that he was not assigned to the Bliss Army Hospital as an army reservist. It appeared to the Court that Dr. Barrette argued alternatively that the parties contemplated an employment relationship within the context of the work he was hired to perform at the Bliss Army Hospital, independent of his reservist relationship with the Army. As to this assertion, the Court answered the threshold question of whether or not there was an employment relationship between Dr. Barrette and the Army in the negative. The Court applied the law of agency, control test, to determine that Dr. Barrette was not an independent contractor, and after a detailed assessment of the extent of control exercised over Dr. Barrette by the hospital, the Court concluded there was no master/servant relationship between Dr. Barrette and the hospital. (Order, filed March 27, 2007, at 17) (citations omitted).

On reconsideration, Dr. Barrette explains that he does in fact assert FTCA immunity based on his employment with the Army as a reservist even though his work at the Bliss Army Hospital was unrelated to his reservist services. As it is conceded that Dr. Barrette is a member of the military, he is an employee of the United States, and Dr. Barrette argues that the Court must therefore consider whether he was acting within the scope of his employment.

2

On reconsideration, it is clear why the Court was confused regarding Dr. Barrette's argument. While he bases his federal employment on his membership in the Army Reserves, his "scope of employment" analysis is based on his working relationship with the Army at the Bliss Army Hospital and not the Army Reserves. In other words, Dr. Barrette's scope of employment analysis is based on an irrelevant employment relationship that was totally disconnected from his membership in the Army Reserves. The Court finds that even though the Army is one entity, the Army Reserves and the Fort Bliss Army Hospital are separate in respect to Dr. Barrette's employment at the hospital and his membership in the Reserves. Dr. Barrette compares apples to oranges. Given this confusion, the Court clarifies its determination that Dr. Barrette's work at the Bliss Army Hospital, including the alleged negligent act, was not within the scope of his employment as an army reservist.

"Whether an individual is a federal employee is a question of federal, not state, law. *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir. 1986). The FTCA defines "employee of the government" to include "members of the military or naval forces of the United States." 28 U.S.C. § 2671.

Whether Dr. Barrette's work at the hospital was within the scope of his employment by the Army as a reservist depends on whether he was acting in the line of duty, which is determined by state principles of *respondeat superior*. *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005); *McCall v. United States*, 338 F.2d 589, 592 (9th Cir. 1964). In Arizona, an employee is acting within the scope of his employment if he meets one of two related tests. The first is adopted from section 228 of the Restatement (Second) of Agency, which makes an act of an employee within the scope of employment only if: (1) it is typical of the kind of work the employee was hired to perform; (2) it occurs within the authorized time and space limits; and (3) it was intended at least in part to serve the master. *Hartzell v. United States*, 786 F.2d 964, 967 (9th Cir. 1986) (citing *Anderson v. Gobea,* 501 P.2d 453, 456 (Ariz. App. 1972); *see also Love v. Liberty Mut. Ins. Co.*, 760 P.2d 1085, 1087 (App. 1988). Alternatively, an employer is liable if, at the time of the accident,

the employee is 1) subject to the employer's control or right of control, and 2) acting in furtherance of the employer's business. *Hartzell v. United States*, 786 F.2d 964, 967 (9th Cir. 1986) (citing *Robarge v. Bechtel Power Corp.*, 640 P.2d 211, 214 (Ariz. App. 1982).

As this Court previously found, "[Dr. Barrette] has never asserted that his practice at the Bliss Army Hospital was an activity of the kind he was employed to perform as an Army reservist, that it occurred substantially within the authorized time and space of his reserve duties, or that it was actuated in any part by a purpose to serve the Army in his reserve capacity." (Order, filed April 26, 2007, at 4.) "Here, Dr. Barrette's employment as an Army reservist had nothing to do with this case, specifically, it had nothing to do with Dr. Barrette's work at the hospital, including the commission of the alleged negligent act." *Id.* at 5. Specifically, the Court finds as follows:

*Kind of Work*. Just because Dr. Barrette could have been employed by the Army in his reservist capacity to perform the work he performed at the Bliss Army Hospital does not make his work there of the kind he was doing as a reservist. In fact, he did perform reserve duties during the time he was at the Bliss Army Hospital. His reserve duties were drilling, PT, and reviewing other doctor's medical charts. (Barrette Depo. at 206-07.) The performance of surgery or the other services he performed at the Bliss Army Hospital were not typical of the kind of work he was performing in his reserve capacity.

*Time and Space Limits*. The alleged negligent act performed at the Bliss Army Hospital did not occur within time and space limits of his duties authorized by the Army Reserves.

*Serving the Master.* None of the acts taken by Dr. Barrette at the Bliss Army Hospital served the interests of the Army Reserves.

The Court finds that as to the work performed by Dr. Barrette at the Bliss Army Hospital, he did not act within the scope of his employment in the Army Reserves. Alternatively, the Court finds that Dr. Barrette was not subject to the control of the Army Reserves in the performance of his duties at the Bliss Army Hospital. He was not acting in

1    furtherance of Army Reserve business.  Dr. Barrette did not act in the line of duty.

2    Therefore, the Government is not liable under the FTCA for his alleged negligent acts; he is

3    not immune from suit under the FTCA.

4                                  The Lent Servant Doctrine

5        The Court finds that  the United States is not Dr. Barrette's employer under the lent

6    servant doctrine for purposes of the FTCA or to shift vicarious liability from Defendants

7    CompHealth and Spectrum to the Bliss Army Hospital.  A "lent employee is employed by

8    a general employer and is 'lent' by the general employer to a special employer for certain

9    work."  *Ruelas v. Staff Builders Personnel Services, Inc.*, 18 P.2d 138, 140 (Ariz. 2001);

10   *McDaniel v. Troy Design Services Co.,* 925 P.2d 693, 695-96 (Ariz. 1996).  Defendants

11   argue that under the lent servant doctrine, Dr. Barrette could be the servant of a general

12   employer, like CompHealth or Spectrum, for some acts and the special employee of the Bliss

13   Army Hospital as to other acts.

14        Once a determination is made that a person works in some capacity for the

15   government, state agency law characterizes the nature of the employment relationship:

16   master/servant or independent contractor.  *Brandes v. United States*, 783 F.2d 895, 897 (9th

17   Cir. 1986).  This was the focus of the Court's March 27, 2007, Order.  After a detailed

18   analysis of the degree of control exercised by the hospital over Dr. Barrette, the Court

19   concluded there was no master/servant relationship between the Bliss Army Hospital and Dr.

20   Barrette.  The Court shall not rethink this analysis.  The Court  affirms its finding, which

21   defeats Defendants' assertions that Dr. Barrette was a lent servant under the control of the

22   United States Government.

23        As the Court explained in its March 27, 2007, except for exercising his professional

24   judgment in relation to treating individual patients, every detail of Dr. Barrette's work was

25   controlled by one or another of  the Defendants or the hospital.  (Order, filed March 27,

26   2007, at 19).  Because Dr. Barrette's professional judgment is not subject to control, this

27   factor is of little significance to whether or not he was an independent contractor.  *Id.* at 15-

28                                           5

18.  Instead, the Court looked at all the other details of his employment and found that CompHealth and Spectrum retained the right to control Dr. Barrettes' employment at the Bliss Army Hospital to justify imposing vicarious liability under a theory of respondeat superior.   While Dr. Barrette was subject to clinical oversight by the hospital, it did not oversee the day-to-day exercise of his professional duties.  *Id.*  The Government's control was limited  to day-to-day clinical directives necessary for the delivery of services at the hospital, and it controlled quality assurance provisions like staff privileging requirements, peer review policies and procedures, and enforcement of regulatory requirements.  Spectrum and CompHealth shared control with the Government over quality assurance provisions, plus controlled or had a right to control all the other terms and conditions of Dr. Barrette's employment.  *Id.* at 20.  Dr. Barrette acted in furtherance of Spectrum and CompHealth's business to provide physicians for the Bliss Army Hospital.  *Id.*

While contract provisions are not determinative, they are strong evidence regarding the parties'[1] intentions.   Pursuant to the parties' express agreements, contractors like Spectrum and CompHealth would be solely liable for negligent acts or omissions of their agents or contractors and would ensure that their providers maintain full professional liability insurance. (Government's Response, Ex. A1: DOD/TriWest Healthcare Alliance contract at C-15; Ex. A3: TriWest/Spectrum contract at 8.)    Spectrum required CompHealth to provide malpractice insurance for the physicians it furnished.  (Government's Response, EX.a4: Spectrum/CompHealth contract at 2.)

Triwest's contract with the Bliss Army Hospital noted that it had entered into a service agreement with Spectrum to provide all the internal resource sharing services, including physicians like Dr. Barrette. (Government's Response, Ex. A2: TriWest Healthcare Alliance/Bliss Army Hospital contract at 1.)  The parties expressly provided that there was no intent to create any relationship among Triwest, the Bliss Army Hospital or the health care

---

[1]This refers to the parties to the contracts, not the parties in this case.

6

personnel provided under the agreement other than that of independent entities contracting with each other solely for the purposes of the contract and that "neither TriWest or [the Bliss Army Hospital] or the health care personnel supplied by the agreement nor any of their respective employers, contractors, agents or employees, shall be construed to be the agent, servant, employee or representative of any other party." *Id.* at 5.

The Court finds that the lent servant arguments raised by the Defendants are contrary to the expressed intentions of the parties in these contracts.

The contract between Spectrum and CompHealth specified that "[p]hysicians provided by CompHealth are independent contractors, and are not employees of CompHealth, Client, nor [the Bliss Army Hospital] for any purpose." (Government's Response, Ex. 4: Spectrum/CompHealth contract at 4.)  The contract between CompHealth and Dr. Barrette expressly stated that he would "perform services as an independent contractor," (Government Response, Ex. 5 CompHealth/Barrette contract at 1), and that as an independent contractor he would not be considered an employee of CompHealth for any purpose, *id.* at 3.  Assuming the first statement referred to his performance of duties at the Bliss Army Hospital, only the latter statement misrepresents the parties' intentions that any control over the employment of physicians like Dr. Barrette reside with contractors like Spectrum and CompHealth.  Any other arrangement would jeopardize the requirement that doctors be placed in military hospitals as independent contractors.

The Court limits its findings accordingly.  Dr. Barrette was <u>not</u> an independent contractor, but there was no master/servant relationship between Dr. Barrette and the hospital so in that respect he was an independent contractor.  In other words, Dr. Barrette was an independent contractor as to the hospital, but not as to Spectrum/CompHealth.  The Court makes no determination regarding liability as between Spectrum and CompHealth because this issue has not been presented to the Court.

7

The Gonzales Act

The Court finds that the Gonzales Act does not apply to Dr. Barrette's performance at the Bliss Army Hospital because he did not contract with the Government to provide his personal services. His contractual relationship was with CompHealth, and he was employed at the Bliss Army Hospital pursuant to a Resource Sharing Agreement between the Government and TriWest. Dr. Barrette's employment at the Army hospital was pursuant to 10 U.S.C. § 1096, not 10 U.S.C. § 1091. If this had been a personal service contract, it would have been so specified on the contract as required by 32 C.F.R. § 107.5, his compensation would have been established by the DOD, not Spectrum/CompHealth, *id.*, and most importantly he would not have been required to maintain professional liability because under the Gonzales Act the FTCA would have applied to immunize him from personal liability for any negligent acts performed on the job.

The Court rejects all the arguments made by the Defendants on reconsideration.

**Accordingly,**

**IT IS ORDERED** that the Motions for Reconsideration (documents 146, 147, 148) are DENIED.

DATED this 27th day of August, 2007.

David C. Bury
United States District Judge